## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| LYNDA ROBERTS, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LANDMARK ADMIN, LLC and LIBERTY BANKERS INSURANCE GROUP, <br><br> Defendant. | Case No. 3:24-cv-02740 <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Lynda Roberts individually, and on behalf of all similarly situated persons, alleges the following against Landmark Admin, LLC ("Landmark") and Liberty Bankers Insurance Group ("LBIG") (collectively "Defendants"), based on Plaintiff's own personal knowledge and on information and belief derived from, among other things, investigation by counsel and review of public documents, as to all other matters:

## I. INTRODUCTION

1.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard Plaintiff's and other similarly situated individuals' ("Class Members," as defined *infra*) sensitive personally identifiable information—i.e., information that is or could be used, whether on its own or in combination with other information, to identify, locate, or contact a person, including, without limitation: full names, email addresses, phone numbers, home addresses, dates of birth, Social Security numbers ("SSN"), drivers' license information, passport number, tax identification number, bank account and other financial information, account

1

information, and other personally identifying information.

2.    Defendant Landmark is a third-party administrator for insurance carriers that knowingly obtains sensitive consumer data and has a duty to securely maintain such information in confidence.

3.    LBIG is an insurance group that includes numerous insurance companies, including American Monumental Life Insurance Company, Pellerin Life Insurance Company, American Benefit Life Insurance Company, Liberty Bankers Life Insurance Company, Continental Mutual Insurance Company, and Capitol Life Insurance Company.

4.    Plaintiff's and Class Members' sensitive personal information—which they entrusted to Defendants on the mutual understanding that Defendants would protect it against disclosure—was targeted, compromised, and unlawfully accessed due to the Data Breach.

5.    The information compromised in the Data Breach included Plaintiff's and Class Members' full names, addresses, Social Security Numbers, driver's license numbers, passport numbers, and tax identification numbers ("personally identifiable information" or "PII/PHI") and medical information, which is protected health information ("PHI"), as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), (collectively referred to as "PII/PHI" or "Private Information").

6.    Plaintiff brings this action on behalf of all persons whose PII/PHI was compromised as a result of Defendants' failure to: (i) adequately protect the PII/PHI of Plaintiff and Class Members; (ii) adequately vet its data security practices; (ii) warn Plaintiff and Class Members of Landmark's inadequate information security practices; and (iii) effectively secure hardware containing protected PII/PHI using reasonable and effective security procedures free of vulnerabilities and incidents. Defendants' conduct amounts at least to negligence and violates

federal law.

7.    The Private Information compromised in the Data Breach was exfiltrated by cyber-criminals and remains in their hands.

8.    Moreover, upon information and belief, Defendants were targeted for a cyber-attack due to its statuses as insurance companies and insurance administrators that collect and maintain highly valuable Private Information on its servers and systems.

9.    The Data Breach was a direct result of Defendants' failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect consumers' Private Information from a foreseeable and preventable cyber-attack.

10.    Defendants disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to ensure that they had adequate and reasonable safeguards and measures in place to protect the PII/PHI of Plaintiff and Class Members after that information was transferred and entrusted to it in the regular course of business. More specifically, Defendants failed to take and implement available steps to prevent an unauthorized disclosure of data, and failed to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption, storage, and destruction of data, even for internal use. As a result, the PII/PHI of Plaintiff and Class Members was compromised through disclosure to unknown and unauthorized third parties.

11.    Plaintiff and Class Members have a continuing interest in ensuring that their Private Information is and remains safe in any further transfers of their sensitive data to third parties and they should be entitled to injunctive and other equitable relief.

12.    Plaintiff's and Class Members' identities are now at risk because of Defendants' negligent conduct since the Private Information that Defendant collected and maintained has been

accessed and acquired by data thieves.

13.     As a result of the Data Breach, Plaintiff and approximately 806,500 Class Members,[1] suffered concrete injuries in fact including, but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) uncompensated lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) Plaintiff's Private Information being disseminated on the dark web; (viii) experiencing an increase in spam calls, texts, and/or emails; (ix) nominal damages; and (x) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

14.     Armed with the Private Information accessed in the Data Breach, data thieves have already engaged in identity theft and fraud and can in the future commit a variety of crimes including, e.g., opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

15.     Plaintiff and Class Members may also incur out of pocket costs, e.g., for purchasing

---

[1] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/2bd97a04-38be-40f1-94fd-9d143ea4bc9f.html

4

credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

16.    Plaintiff brings this class action lawsuit on behalf all those similarly situated to address Defendants' inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access by an unknown third party and precisely what specific type of information was accessed.

17.    Through this Complaint, Plaintiff and Class Members seek to remedy these harms and prevent any future data compromise on behalf of themselves and all similarly situated persons whose Private Information was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendants' inadequate data security practices.

## II. PARTIES

### *Plaintiff Lynda Roberts*

18.    Plaintiff is a citizen and resident of Iberia Parrish, Louisiana.

19.    Plaintiff is a customer of Liberty Bankers Life Insurance, former customer of Pellerin Life Insurance Company and American Monumental. Plaintiff provided PII/PHI to Pellerin Life Insurance Company as a condition to receiving insurance services.

20.    Plaintiff provided PII/PHI to Defendants and trusted the companies would use reasonable measures to protect it according to its policies, as well as state and federal law. Defendants obtained and continue to maintain Plaintiff's PII/PHI and have a continuing legal duty and obligation to protect that PII/PHI from unauthorized access and disclosure.

21.     At the time of the Data Breach, Defendants collected and retained Plaintiff's and Class Members' PII/PHI in their servers and systems.

22.     Plaintiff's and Class Members' PII/PHI was compromised in the Data Breach and stolen by cybercriminals.

23.     Plaintiff has been injured by the compromise of Plaintiff's PII/PHI.

24.     Plaintiff takes reasonable measures to protect PII/PHI. Plaintiff has never knowingly transmitted unencrypted PII/PHI over the internet or other unsecured source.

25.     Plaintiff stores any documents containing PII/PHI in a safe and secure location and diligently chooses unique usernames and passwords for online accounts.

26.     Had Plaintiff known that Defendants do not adequately protect PII/PHI, Plaintiff would not have agreed to provide sensitive PII/PHI to Defendants and would not have agreed to be a customer.

27.     As a result of and following the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach to protect Plaintiff from identity theft and fraud. Plaintiff has monitored, and continues to monitor, accounts, credit reports and credit scores, and has sustained emotional distress. This is time that was lost and unproductive and took away from other activities and duties.

28.     And in the aftermath of the Data Breach, Plaintiff has suffered from a spike in spam and scam text messages and phone calls. Plaintiff fears for Plaintiff's personal financial security and worries about what information was exposed in the Data Breach. Because of the Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

29.     Plaintiff also suffered actual injury in the form of damages to and diminution in the value of Plaintiff's PII/PHI—a form of intangible property that was entrusted to Defendants, which was compromised in and as a result of the Data Breach.

30.     Plaintiff suffered uncompensated lost time, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of privacy.

31.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from Plaintiff's PII/PHI being placed in the hands of criminals that will continue for Plaintiff's lifetime.

32.     Defendants obtained and continue to maintain Plaintiff's PII/PHI, and thus has a continuing legal duty and obligation to protect that PII/PHI from unauthorized access and disclosure. Plaintiff's PII/PHI was compromised and disclosed as a result of the Data Breach.

33.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

34.     Further, Plaintiff is and will remain at risk of harm in the future because Defendants continue to maintain Plaintiff's confidential PII/PHI but does not take adequate steps to protect that information from a data breach. Accordingly, Plaintiff's PII/PHI faces an imminent risk of disclosure in a future data breach of Landmark or LBIG.

### *Defendant Landmark Admin, LLC*

35.     Defendant Landmark based in Brownwood, Texas provides third party administration for insurance carriers, including Liberty Bankers Insurance Group, which includes American Monumental Life Insurance Company, Pellerin Life Insurance Company, American

Benefit Life Insurance Company, Liberty Bankers Life Insurance Company, Continental Mutual Insurance Company, and Capitol Life Insurance Company.

36.     Defendant is a Texas limited liability company with its principal place of business located at 5750 County Road 225, Brownwood, Texas 76801. The registered agent for service of process is Thomas A. Munson, 5750 County Road 225, Brownwood, Texas 76801. Defendant is a citizen of Texas.

37.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Plaintiff.

38.     Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the responsible parties when their identities become known.

### Defendant LBIG

39.     Defendant LBIG is a company with its principal place of business located at 1605 Lyndon B. Johnson Freeway, Suite 700, Dallas, Texas 75234.

40.     LBIG provides life insurance products, such as final expense (burial and cremation policies) to consumers such as Plaintiff.

## III. JURISDICTION AND VENUE

41.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are Class Members who are diverse from Defendant, and (4) there are more than 100 Class Members. Defendants are citizens of Texas.

42.     The Court has jurisdiction over Defendants through their business operations in the

Dallas Division of the Northern District of Texas, the specific nature of which occurs in this District. Defendants' principal place of businesses are in the Northern District of Texas. Defendants intentionally avail themselves of the markets within this District to render the exercise of jurisdiction by this Court just and proper.

43.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant LBIG's principal place of business is located in the Dallas Division of the Northern District of Texas.

## IV. FACTUAL ALLEGATIONS

### A.    *Defendants' Business*

44.    Landmark is a third-party administrator for insurance carriers.

45.    LBIG is an insurance group that includes numerous insurance companies, including American Monumental Life Insurance Company, Pellerin Life Insurance Company, American Benefit Life Insurance Company, Liberty Bankers Life Insurance Company, Continental Mutual Insurance Company, and Capitol Life Insurance Company.

46.    Plaintiff and Class Members are current and former customers of LBIG and Landmark.

47.    In the regular course of their business, Landmark and LBIG receives and handles PII/PHI, which includes, *inter alia*, consumers' full name, address, date of birth, driver's license numbers, tax identification numbers, Social Security numbers, financial account and payment card information, medical information and other sensitive information from their customers and other individuals who interact or otherwise transact with Landmark and LBIG for business purposes.

48.    Defendants store this highly sensitive information digitally.

49.    Plaintiff entrusted this information to Defendants with the reasonable expectation

and mutual understanding that Defendants would comply with its obligations to keep such information confidential and secure from unauthorized access.

50.     By obtaining, collecting, and storing Plaintiff's PII/PHI, Defendants assumed legal and equitable duties and knew or should have known that Defendants were responsible for protecting Plaintiff's PII/PHI from unauthorized disclosure.

51.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII/PHI. Plaintiff and Class Members value the confidentiality of their PII/PHI and demand security to safeguard their PII/PHI.

52.     Defendants have a duty to adopt reasonable measures to protect the PII/PHI of Plaintiff and Class Members from involuntary disclosure to third parties. Defendants have a legal duty to keep its customers' PII/PHI safe and confidential.

53.     Defendants have obligations created by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"), contract, industry standards, and representations made to Plaintiff and Class Members, to keep their PII/PHI confidential and to protect it from unauthorized access and disclosure.

54.     Defendants derived a substantial economic benefit from collecting Plaintiff's and Class Members' PII/PHI. Without the required submission of PII/PHI, Defendants could not perform the services they provide.

55.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII/PHI, Defendants assumed legal and equitable duties and knew or should have known it was responsible for protecting Plaintiff's and Class Members' PII/PHI from disclosure.

**B.     *The Data Breach***

56.     Landmark Admin detected the suspicious activity on its computer network in May

2024, indicating a data breach.

57.    The incident prompted the company to shut down and isolate its IT systems and remote access to its network to prevent the attack from reaching other parts of its systems. Based on a subsequent forensic investigation, Landmark determined that cybercriminals infiltrated its inadequately secured computer environment and thereby gained access to its data files from May 13, 2024, through June 17, 2024. The investigation further determined that, through this infiltration, cybercriminals potentially accessed and acquired files containing the sensitive personal information of 806,519 individuals.[2]

58.    Based on the Notice of Data Breach ("Notice") found on Landmark's website, the data breach occurred on or about May 13, 2024.[3]

59.    On or about October 23, 2024, Landmark began sending Plaintiff[4] and other Data Breach victims a Notice of Data Breach letter (the "Notice Letter"), informing them that:

**What Happened**

On or about May 13, 2024, Landmark detected suspicious activity on its system. Upon discovery of this incident, Landmark immediately disconnected the affected systems and remote access to the network and promptly engaged a specialized third-party cybersecurity firm and IT personnel to assist with securing the environment, as well as to conduct a comprehensive forensic investigation to determine the nature and scope of the incident. The forensic investigation concluded on or about July 24, 2024, and determined that there was unauthorized access to Landmark's network and data was encrypted and exfiltrated from its system. The unauthorized activity occurred from May 13, 2024 to June 17, 2024.

Based on these findings, Landmark began reviewing the affected systems to identify the individuals potentially affected by this incident and the types of information that may

---

[2] *Data Breach Notification*
https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-
a1252b4f8318/2bd97a04-38be-40f1-94fd-9d143ea4bc9f.html
[3] *Landmark's Notice of Data Breach*
https://static1.squarespace.com/static/64026b23ed9cd8111728dd9c/t/667c9b08ed0f885223dc1ca
2/1719442184225/Landmark+Admin+-+Substitute+Notice+-+6-26-2024.pdf
[4] The Notice Letter that Plaintiff received is attached as Exhibit A.

have been compromised. While this process remains ongoing, and in an abundance of caution, Landmark is notifying potentially affected individuals by mail on a rolling basis as they are identified. We determined that some of your personal information may have been affected by the incident.

**What Information Was Involved**

The personal information that may have been subject to unauthorized access includes: name; tax identification number. For some individuals, it is possible that the following additional information may have been subject to unauthorized access (if this information was provided to Landmark): driver's license number; passport number; and medical and/or health information.

60.     Omitted from the Notice Letter were the identity of the cybercriminals who perpetrated this Data Breach, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these omitted details have not been explained or clarified to Plaintiff and Class Members, who retain a vested interest in ensuring that their Private Information remains protected.

61.     This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiff and Class Members of the Data Breach's critical facts. Without these details, Plaintiff's and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

62.     This Data Breach is considered the sixth-largest ransomware attack on a US financial company this year so far.[5]

63.     According to Landmark, the Personal Information accessed by cybercriminals involved a wide variety of PII/PHI, including names, dates of birth, addresses, Social Security numbers, medical treatment information, health insurance information, tax identification numbers,

---

[5] *Landmark Admin notifies 807K of data breach after ransomware attack compromised SSNs, financial and medical info,* https://www.comparitech.com/news/landmark-admin-notifies-807k-of-data-breach-after-ransomware-attack-compromised-ssns-financial-and-medical-info/

driver's license numbers, passport numbers, financial account information, and/or life and annuity policy information.[6]

64.    PHI is particularly valuable and has been referred to as a "treasure trove for criminals."[7] A study by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.

65.    Despite the breadth and sensitivity of the PII/PHI that was exposed, and the attendant consequences to patients as a result of the exposure, Landmark failed to disclose the Data Breach for months from the time of the Breach. This inexplicable delay further exacerbated the harms to Plaintiff and Class Members.

66.    Based on the Notice Letter received by Plaintiff, the type of cyberattack involved, and public news reports, it is plausible and likely that Plaintiff's Private Information was stolen in the Data Breach.

67.    Upon information and belief, the unauthorized third-party cybercriminal gained access to the Private Information and has engaged in (and will continue to engage in) misuse of the Private Information, including marketing and selling Plaintiff's and Class Member's Private Information on the dark web.

68.    Accordingly, Defendant had obligations created by industry standards, common law, statutory law, and its own assurances and representations to keep Plaintiff and Class Members' Private Information confidential and to protect such Private Information from

---

[6] Id.
[7] See Andrew Steger, *What Happens to Stolen Healthcare Data?*, HealthTech Magazine (Oct. 30, 2019), https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon (quoting Tom Kellermann, Chief Cybersecurity Officer, Carbon Black, stating "Health information is a treasure trove for criminals.").

unauthorized access.

69.    Defendants did not use reasonable security procedures and practices appropriate to the nature of the sensitive personal information they were maintaining for Plaintiff and Class Members, causing the exposure of PII/PHI. Nor did Defendants take the precautions and measures needed to ensure Landmark's data security protocols were sufficient to protect the PII/PHI in its possession.

70.    The attacker accessed and acquired files containing unencrypted PII/PHI of Plaintiff and Class Members. Plaintiff's and Class Members' PII/PHI was accessed and stolen in the Data Breach.

71.    Plaintiff further believes Plaintiff's PII/PHI, and that of Class Members, was subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyberattacks of this type.

**C.  *Defendants Acquire, Collect, and Store Plaintiff's and Class Members' PII/PHI***

72.    Theft of PII/PHI is serious. The FTC warns consumers that identity thieves use PII/PHI to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[8]

73.    Defendants derive a substantial economic benefit from providing services to its customers, and as a part of providing those services, Defendants retain and store the PII/PHI of its customers and of other individuals who interact or otherwise transact with Landmark and LBIG for business purposes, including that of Plaintiff and Class Members.

74.    By obtaining, collecting, and storing the PII/PHI of Plaintiff and Class Members,

---

[8] *See What to Know About Identity Theft*, Federal Trade Commission Consumer Advice, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed on Feb. 29, 2024).

Defendants assumed legal and equitable duties and knew or should have known it was responsible for protecting the PII/PHI from disclosure, and making sure the PII/PHI was safe in the hands of any vendors to which Landmark and/or LBIG provided that highly sensitive information.

75.    Data breaches involving medical information "typically leave[] a trail of falsified information in medical records that can plague victims' medical and financial lives for years."[9] It "is also more difficult to detect, taking almost twice as long as normal identity theft."[10] In warning consumers on the dangers of medical identity theft, the FTC states that an identity thief may use private, personal information "to see a doctor, get prescription drugs, buy medical devices, submit claims with your insurance provider, or get other medical care." [11] The FTC also warns, "If the thief's health information is mixed with yours, it could affect the medical care you're able to get or the health insurance benefits you're able to use. It could also hurt your credit."[12]

76.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII/PHI.

77.    Plaintiff and Class Members relied on Defendants to keep their PII/PHI confidential and maintained securely, to use this information for business purposes only, to provide the information to trusted and secure vendors and other third parties, and to make only authorized disclosures of this information.

78.    Defendants could have prevented this Data Breach by properly securing the PII/PHI

---

[9] Pam Dixon and John Emerson, *The Geography of Medical Identity Theft*, WORLD PRIVACY FORUM (Dec. 12, 2017), https://www.worldprivacyforum.org/2017/12/new-report-the-geography-of-medical-identity-theft/.

[10] *See Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain*, n.31, *supra*.

[11] *See What to Know About Identity Theft*, n.41, *supra*.

[12] *Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain*, FBI Cyber Division (Apr. 8, 2014), https://www.illuminweb.com/wp-content/uploads/ill-mo-uploads/103/2418/health-systems-cyber-intrusions.pdf.

of Plaintiff and Class Members and ensuring that its vendors did the same.

79.    Upon information and belief, Defendants made promises to its customers and consumers to maintain and protect PII/PHI, demonstrating an understanding of the importance of securing PII/PHI.

80.    Defendants' negligence in safeguarding the PII/PHI of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

D.  **Defendants Knew or Should Have Known of the Risk Because Institutions in Possession of PII/PHI Are Particularly Susceptible to Cyberattacks**

81.    Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches targeting institutions that collect and store PII/PHI, like Defendants, preceding the date of the Data Breach.

82.    Data thieves regularly target companies that receive and maintain PII/PHI due to the highly sensitive nature of that information in their custody. Defendants knew and understood that unprotected PII/PHI is valuable and highly sought after by criminal parties who seek to illegally monetize that PII/PHI through unauthorized access.

83.    In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[13]

84.    In light of recent high profile data breaches at other industry leading companies, including Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January

---

[13] *See* 2021 Data Breach Annual Report, at 6, IDENTITY THEFT RESOURCE CENTER (Jan. 2022), https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf.

2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendants knew or should have known the PII/PHI it collected and maintained would be targeted by cybercriminals.

85.    As a custodian of PII/PHI, Defendants knew, or should have known, the importance of safeguarding the PII/PHI entrusted to it, and of the foreseeable consequences if its data security systems were breached, including the significant costs imposed on Plaintiff and Class Members as a result of a breach.

86.    Defendants were, or should have been, fully aware of the unique type and the significant volume of data it collected and maintained and, thus, the significant number of individuals who would be harmed by the exposure of that data.

87.    Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the PII/PHI of Plaintiff and Class Members from being compromised.

88.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the PII/PHI of Plaintiff and Class Members, and Defendants' failure to adequately vet its vendors.

89.    The ramifications of Defendants' failure to keep secure the PII/PHI of Plaintiff and Class Members are long-lasting and severe. Once PII/PHI is stolen, fraudulent use of that information and damage to victims may continue for years.

### E. *Value of Personally Identifiable Information*

90.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[14]

---

[14] 17 C.F.R. § 248.201 (2016).

The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[15]

91.    The PII/PHI of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[16]

92.    For example, PII/PHI can be sold at a price ranging from $40 to $200.[17] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[18]

93.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, payment card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

94.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information,

---

[15] *Id.*

[16] Anita George, *Your personal data is for sale on the dark web. Here's how much it costs,* DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[17] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

[18] *In the Dark*, VPNOVERVIEW.COM, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Oct. 8, 2024).

personally identifiable information . . . [is] worth more than 10x on the black market."[19]

95.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing, or even give false information to police.

96.    The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII/PHI is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[20]

**F.    *Defendants Failed to Comply with FTC Guidelines***

97.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making.

98.    In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal consumer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct

---

[19] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, NETWORK WORLD (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.
[20] U.S. GOV'T ACCOUNTABILITY OFF., GAO-07-737, *Report to Congressional Requesters*, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

99.     The FTC further recommends that companies not maintain PII/PHI longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

100.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

101.    As evidenced by the Data Breach, Defendants failed to properly implement basic data security practices and failed to audit, monitor, or ensure the integrity of its data security practices, and those of its vendors. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII/PHI constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

102.    Defendants were at all times fully aware of their obligation to protect the PII/PHI it was entrusted with, yet failed to comply with such obligation. Defendants were also aware of the significant repercussions that would result from their failure to do so.

**G.      *Defendants Failed to Comply with Industry Standards***

103.    As noted above, experts studying cybersecurity routinely identify institutions like Defendants as being particularly vulnerable to cyberattacks because of the value of the PII/PHI which it collects and maintains.

104.    Some industry best practices that should be implemented by institutions dealing with sensitive PII/PHI, like Landmark and LBIG, include, but are not limited to: educating all employees; strong password requirements; multilayer security, including firewalls; anti-virus and anti-malware software; encryption; multi-factor authentication; backing up data; and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendants failed to follow some or all these industry best practices.

105.    Other best cybersecurity practices that are standard at large institutions that store PII/PHI include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendants failed to follow these cybersecurity best practices.

106.    Upon information and belief Defendants also failed to meet the minimum standards of one or more of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

107.    Defendants failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

21

**H.** ***Defendants Breached Their Duties to Safeguard Plaintiff's and Class Members' PII/PHI***

108.    In addition to their obligations under federal laws, Defendants owed duties to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII/PHI in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed duties to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the PII/PHI of Class Members.

109.    Defendants owed a duty to Plaintiff and Class Members to implement processes that would detect a compromise of PII/PHI in a timely manner.

110.    Defendants owed a duty to Plaintiff and Class Members to properly vet all third parties to whom it provided its customers' and other related individual's highly sensitive PII/PHI.

111.    Defendants owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

112.    Defendants owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

113.    Defendants breached their obligations to Plaintiff and Class Members and/or were otherwise negligent and reckless because they failed to properly maintain and safeguard their computer systems and data and failed to audit, monitor, or ensure the integrity of its data security practices. Defendants' unlawful conduct includes, but is not limited to, the following acts and/or omissions:

      a.    Failing to adequately vet its vendors and/or third party administrators to ensure they maintained sufficient data security practices;

22

    b. Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

    c. Failing to adequately protect customers' and other related individuals' PII/PHI;

    d. Failing to properly monitor its own data security systems for existing intrusions;

    e. Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

    f. Failing to adhere to industry standards for cybersecurity as discussed above; and

    g. Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' PII/PHI.

114. Defendants negligently and unlawfully failed to safeguard Plaintiff's and Class Members' PII/PHI by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted PII/PHI.

115. Had Defendants remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential PII/PHI.

    **I.**    ***Common Injuries & Damages***

116. As a result of Defendants' ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of PII/PHI ending up in the possession of criminals, the risk of identity theft to Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain

(price premium damages); (d) diminution of the value of their PII/PHI; (e) invasion of privacy; and (f) the continued risk to their PII/PHI, which remains in the possession of Defendants', and which is subject to further breaches, so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII/PHI.

J.    ***The Data Breach Increases Victims' Risk of Identity Theft***

117.    Plaintiff and Class Members are at a heightened risk of identity theft for years to come.

118.    The unencrypted PII/PHI of Class Members will end up for sale on the dark web because that is the *modus operandi* of hackers. In addition, unencrypted PII/PHI may fall into the hands of companies that will use the detailed PII/PHI for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the PII/PHI of Plaintiff and Class Members.

119.    The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal PII/PHI to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft-related crimes discussed below.

120.    Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity—or track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

121.    For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's log-in credentials or Social Security number. Social

engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data Breaches can be the starting point for these additional targeted attacks on the victim.

122.    One such example of criminals piecing together bits and pieces of compromised PII/PHI for profit is the development of "Fullz" packages.[21]

123.    With "Fullz" packages, cybercriminals can cross-reference two sources of PII/PHI to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals.

124.    The development of "Fullz" packages means that the stolen PII/PHI from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, driver's license numbers, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII/PHI that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal

---

[21] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, Social Security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money can be made off of those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, KREBSONSECURITY.COM BLOG (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm.

and scam telemarketers) over and over.

**K.    *Loss of Time to Mitigate Risk of Identity Theft and Fraud***

125.    As a result of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their PII/PHI was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft or fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet the resource and asset of time has been lost.

126.    Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience as a result of the Data Breach, such as contacting credit bureaus to place freezes on their accounts; changing passwords and re-securing their own computer networks; and checking their financial accounts and credit reports for any indication of fraudulent activity, which may take years to detect.

127.    These efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[22]

128.    These efforts are also consistent with the steps the FTC recommends that data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (and considering an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on

---

[22] U.S. GOV'T ACCOUNTABILITY OFF., GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), https://www.gao.gov/new.items/d07737.pdf

their credit, and correcting their credit reports.[23]

129.    A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information:



**L.**

**Diminution of Value of PII/PHI**

124.    PII/PHI is a valuable property right. Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyberthefts include heavy prison sentences. Even this obvious risk-to-reward analysis illustrates beyond a doubt that PII/PHI has considerable market value.

125.    An active and robust legitimate marketplace for PII/PHI exists. In 2019, the data brokering industry was worth roughly $200 billion.[24]

---

[23] *See* Federal Trade Commission, IDENTITY THEFT.GOV, https://www.identitytheft.gov/Steps (last visited Oct. 8, 2024).
[24] David Lazarus, *Shadowy data brokers make the most of their cloak,* LOS ANGELES TIMES (Nov. 5, 2019), https://www.latimes.com/business/story/2019-11-05/column-data-brokers.

126.    In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[25]

127.    Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[26]

128.    Conversely, sensitive PII/PHI can sell for as much as $363 per record on the dark web according to the Infosec Institute.[27]

129.    As a result of the Data Breach, Plaintiff's and Class Members' PII/PHI, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the PII/PHI is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

M.    ***Future Cost of Credit and Identity Theft Monitoring Is Reasonable and Necessary***

130.    Given the type of targeted attack in this case and sophisticated criminal activity, the type of PII/PHI involved, and the volume of data obtained in the Data Breach, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchased by criminals intending to utilize the PII/PHI for identity theft crimes—*e.g.*, opening bank accounts in the victims' names to make purchases or to

---

[25] DATACOUP, https://datacoup.com/ (last visited Oct. 8, 2024).
[26] Nielsen Computer & Mobile Panel, *Frequently Asked Questions*, available at: https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visit Oct. 8, 2024).
[27] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, INFOSEC (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/.

launder money; filing false tax returns; taking out loans or lines of credit; or filing false unemployment claims.

131.    Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

132.    Consequently, Plaintiff and Class Members are at a present and continuous risk of fraud and identity theft for many years into the future.

133.    The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft that arose from the Data Breach. This is a future cost, for a minimum of five years, that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their PII/PHI.

N.    *Plaintiff's Experience*

134.    Plaintiff is a current customer of LBIG, which, upon information and belief, contracted with Landmark to perform third party administration services. Plaintiff provided PII/PHI to LBIG (and to Landmark) as a condition to opening and maintaining an account with LBIG and to receive LBIG (and Landmark's) services.

135.    Plaintiff provided PII/PHI to LBIG and trusted the company would use reasonable measures to protect it according to its policies, as well as state and federal law. Defendants obtained and continue to maintain Plaintiff's PII/PHI and have a continuing legal duty and obligation to protect that PII/PHI from unauthorized access and disclosure.

136.    At the time of the Data Breach, Defendants collected and retained Plaintiff's and Class Members' PII/PHI in its systems.

137.    Plaintiff's and Class Members' PII/PHI was compromised in the Data Breach and stolen by cybercriminals.

138.    Plaintiff has been injured by the compromise of Plaintiff's PII/PHI.

139.    Plaintiff takes reasonable measures to protect PII/PHI. Plaintiff has never knowingly transmitted unencrypted PII/PHI over the internet or other unsecured source.

140.    Plaintiff stores any documents containing PII/PHI in a safe and secure location and diligently chooses unique usernames and passwords for online accounts.

141.    Had Plaintiff known that Defendants do not adequately protect PII/PHI, Plaintiff would not have agreed to provide sensitive PII/PHI to Defendants and would not have agreed to be a customer of LBIG.

142.    As a result of and following the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach to protect Plaintiff from identity theft and fraud. Plaintiff has monitored, and continues to monitor, accounts, credit reports and credit scores, and has sustained emotional distress. This is time that was lost and unproductive and took away from other activities and duties.

143.    And in the aftermath of the Data Breach, Plaintiff has suffered from a spike in spam and scam text messages and phone calls. Plaintiff fears for Plaintiff's personal financial security and worries about what information was exposed in the Data Breach. Because of the Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

144.    Plaintiff also suffered actual injury in the form of damages to and diminution in the value of Plaintiff's PII/PHI—a form of intangible property that was entrusted to Defendants, which was compromised in and as a result of the Data Breach.

145.    Plaintiff suffered uncompensated lost time, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of privacy.

146.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from Plaintiff's PII/PHI being placed in the hands of criminals that will continue for Plaintiff lifetime.

147.    Defendants obtained and continue to maintain Plaintiff's PII/PHI, and thus has a continuing legal duty and obligation to protect that PII/PHI from unauthorized access and disclosure. Plaintiff's PII/PHI was compromised and disclosed as a result of the Data Breach.

148.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

149.    Further, Plaintiff is and will remain at risk of harm in the future because Defendants continue to maintain and store Plaintiff's confidential PII/PHI but do not take adequate steps to protect that sensitive information from a data breach. Accordingly, Plaintiff's PII/PHI faces an imminent risk of disclosure in a future Landmark data breach.

## V. CLASS ALLEGATIONS

150.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks certification of the following class:

**<u>Nationwide Class</u>**
All individuals residing in the United States whose PII/PHI was compromised in

the Data Breach, including all individuals who received notice of the Data Breach.

151.   Excluded from the Class are Defendants and their parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned, as well as their judicial staff and immediate family members.

152.   Plaintiff reserves the right to modify or amend the definition of the proposed Class, as well as to add subclasses, before the Court determines whether certification is appropriate.

153.   The proposed Class meets the criteria for certification under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3).

154.   <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, Plaintiff believes the proposed Class includes hundreds of thousands of individuals who have been damaged by Defendants' conduct as alleged herein. The precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's records.

155.   <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

   a.   Whether Defendants engaged in the conduct alleged herein;

   b.   Whether Defendants' conduct violated the FTCA;

   c.   When Defendants learned of the Data Breach;

   d.   Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the PII/PHI compromised in the Data Breach;

e.   Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

f.   Whether Defendants' data security systems, prior to and during the Data Breach, were consistent with industry standards;

g.   Whether Defendants owed duties to Class Members to safeguard their PII/PHI;

h.   Whether Defendants breached its duties to Class Members to safeguard their PII/PHI;

i.   Whether hackers obtained Class Members' PII/PHI via the Data Breach;

j.   Whether Defendants had legal duties to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

k.   Whether Defendants breached their duties to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

l.   Whether Defendants knew or should have known their data security systems and monitoring processes were deficient;

m.   What damages Plaintiff and Class Members suffered as a result of Defendants' misconduct;

n.   Whether Defendants' conduct was negligent;

o.   Whether Defendants breached implied contracts with Plaintiff and Class Members;

p.   Whether Defendants were unjustly enriched;

q.   Whether Plaintiff and Class Members are entitled to damages;

r.   Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

s.    Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

156.    <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII/PHI, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through Defendants' common misconduct. Plaintiff is advancing the same claims and legal theories on behalf of Plaintiff and all other Class Members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

157.    <u>Adequacy of Representation.</u> Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

158.    <u>Predominance</u>. Defendants have engaged in common courses of conduct toward Plaintiff and Class Members. For example, all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

159.    <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class

Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

160.    Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2). Defendants have acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

161.    Finally, all members of the proposed Class are readily ascertainable. Defendants have access to the names, email and/or postal addresses, and phone numbers of Class Members affected by the Data Breach.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**
**Negligence**
**(On Behalf of Plaintiff and the Nationwide Class)**

162.    Plaintiff realleges and incorporates by reference paragraphs 1-161 as if fully set forth herein.

163.    Defendants owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the PII/PHI.

164. Moreover, Defendants have a duty to promptly and adequately notify Plaintiff and Class Members of the Data Breach.

165. Defendants have and continue to have duties to adequately disclose that the PII/PHI of Plaintiff and Class Members within Defendants' custody, control or possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII/PHI by third parties.

166. Defendants breached their duties, pursuant to the FTCA and other applicable standards, and thus were negligent, by failing to use reasonable measures to protect Class Members' PII/PHI. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

  a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII/PHI, including in choosing its vendors;

  b. Failing to hold vendors with whom it shared sensitive PII/PHI to adequate standards of data protection;

  c. Allowing unauthorized access to Class Members' PII/PHI;

  d. Failing to detect in a timely manner that Class Members' PII/PHI had been compromised;

  e. Failing to remove former customers' PII/PHI it was no longer required to retain pursuant to regulations; and

  f. Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

167.    Plaintiff and Class Members were within the class of persons the FTCA was intended to protect and the type of harm that resulted from the Data Breach was the type of harm this statute was intended to guard against.

168.    The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

169.    Defendants breached their duties to Plaintiff and Class Members under Section 5 of the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII/PHI.

170.    Plaintiff and Class Members were foreseeable victims of Defendants' violations of Section 5 of the FTCA.

171.    A breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly in light of Defendants' inadequate security practices.

172.    It was foreseeable that Defendants' failure to use reasonable measures to protect Class Members' PII/PHI would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches at large corporations that collect and store PII/PHI.

173.    Defendants have full knowledge of the sensitivity of the PII/PHI and the types of harm that Plaintiff and Class Members could and would suffer if the PII/PHI were wrongfully disclosed.

174.    Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendants knew or should have known of the

inherent risks in collecting and storing the PII/PHI of Plaintiff and Class Members, the critical importance of providing adequate security of that PII/PHI, and the necessity for encrypting PII/PHI stored on its servers and/or systems.

175.    It was therefore foreseeable that the failure to adequately safeguard Class Members' PII/PHI would result in one or more types of injuries to Class Members.

176.    Plaintiff and Class Members had no ability to protect their PII/PHI that was in, and possibly remains in, Defendants' possession, custody or control.

177.    Defendants were in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

178.    Defendants' duties extended to protecting Plaintiff and Class Members from the risk of foreseeable criminal conduct of third parties, which have been recognized in situations where the actor's own conduct or misconduct exposes another to risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

179.    Defendants have admitted that the PII/PHI of Plaintiff and Class Members were wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

180.    But for Defendants' wrongful and negligent breaches of duties owed to Plaintiff and Class Members, the PII/PHI of Plaintiff and Class Members would not have been compromised.

181.    There is a close causal connection between Defendants' failure to implement security measures to adequately protect the PII/PHI of Plaintiff and Class Members and the harm, or risk of imminent harm, suffered by Plaintiff and Class Members. The PII/PHI of Plaintiff and

Class Members was lost and accessed as the proximate result of Defendants' failure to exercise reasonable care in securing and safeguarding such PII/PHI by adopting, implementing, and maintaining appropriate security measures.

182.    As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of PII/PHI; (iii) uncompensated lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their PII/PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' care, custody, control or possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII/PHI.

183.    As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

184.    Additionally, as a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their PII/PHI, which remain in Defendants' care, custody, control or possession and are subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII/PHI in its continued possession.

185.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

186.    Defendants' negligent conduct is ongoing, in that it still holds the PII/PHI of Plaintiff and Class Members in an unsafe and insecure manner.

187.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

<u>COUNT II</u>
**Negligence Per Se**
**(On Behalf of Plaintiff and the Nationwide Class)**

188.    Plaintiff realleges and incorporates by reference paragraphs 1-161 as if fully set forth herein.

189.    Defendant's duties arise from, *inter alia*, Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by a business, such as Defendants, of failing to employ reasonable measures to protect and secure Private Information.

190.    Defendants violated Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiff's and all other Class Members' Personal Information and not complying with applicable industry standards. Defendants' conduct was particularly unreasonable given the nature and amount of Personal Information it obtains and stores, and the foreseeable consequences of a data breach involving Personal Information including, specifically, the substantial damages that would result to Plaintiff and the other Class Members.

191.    Defendants' violations of Section 5 of the FTCA constitutes negligence per se.

192.    Plaintiff and Class Members are within the class of persons that Section 5 of the FTCA were intended to protect.

193.    The harm occurring as a result of the Data Breach is the type of harm Section 5 of the FTCA was intended to guard against.

194.    It was reasonably foreseeable to Defendants that their failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiff's and Class Members' Private Information to unauthorized individuals.

195.    The injury and harm that Plaintiff and the other Class Members' suffered was the direct and proximate result of Defendants' violations of law, including Section 5 of the FTCA. Plaintiff and Class Members' have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft and medical theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their Private Information; (iii) breach of the confidentiality of their Private Information; (iv) deprivation of the value of their Private Information, for which there is a well-established national and international market; (v) uncompensated lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face; and (vi) actual or attempted fraud.

<u>**COUNT III**</u>
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Nationwide Class)**

196.    Plaintiff realleges and incorporates by reference paragraphs 1-161 as if fully set forth herein.

197.    Defendants offered to provide services to its customers, including Plaintiff and Class Members, in exchange for payment.

198.    Defendants also required Plaintiff and Class Members to provide them with their PII/PHI in order to receive services.

199.    In turn, Defendants impliedly promised to protect Plaintiff's and Class Members' PII/PHI through adequate data security measures.

200.    Plaintiff and Class Members accepted Defendants' offer by providing their valuable PII/PHI to Defendants in exchange for Plaintiff and Class Members receiving Defendants' services, and then by paying for and receiving the same.

201.    Plaintiff and Class Members would not have done the foregoing but for the above-described agreement with Defendants.

202.    A meeting of the minds occurred when Plaintiff and Class Members agreed to, and did, provide their PII/PHI to Defendants in exchange for, amongst other things, the protection of such information.

203.    Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendants.

204.    However, Defendants breached the implied contracts it made with Plaintiff and Class Members by failing to safeguard and protect their PII/PHI and by failing to provide timely and accurate notice to them that their PII/PHI was compromised as a result of the Data Breach.

205.    In sum, Plaintiff and Class Members have performed under the relevant agreements, or such performance was waived by the conduct of Defendants.

206.    As a reasonably foreseeable result of the Data Breach, Plaintiff and Class Members were harmed by Defendants' failure to use reasonable data security measures to store their PII/PHI, including but not limited to, the actual harm through the loss of their PII/PHI to cybercriminals.

207.    Accordingly, Plaintiff and Class Members are entitled to damages in an amount to be determined at trial, along with their costs and attorneys' fees incurred in this action.

<b><u>COUNT IV</u></b>
<b>Unjust Enrichment</b>
<b>(On Behalf of Plaintiff and the Nationwide Class)</b>

208.    Plaintiff realleges and incorporates by reference paragraphs 1-161 as if fully set forth herein.

209.    This count is brought in the alternative to Plaintiff's breach of implied contract claims.

210.    Upon information and belief, Defendants fund its data security measures entirely from its general revenue, including from payments made by or on behalf of its customers, like Plaintiff, for services.

211.    As such, a portion of the value and monies derived from payments made by its customers for services is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendants.

212.    Plaintiff and Class Members conferred a monetary benefit on Defendants in providing it with their valuable PII/PHI.

213.    Defendants knew that Plaintiff and Class Members conferred a benefit which Defendants accepted. Defendants profited from these transactions and used the PII/PHI of Plaintiff and Class Members for business purposes.

214.    In particular, Defendants enriched itself by saving the costs it reasonably should

have expended on data security measures to secure Plaintiff and Class Members' PII/PHI. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' decision to prioritize its own profit over the requisite security.

215.    Defendants failed to secure Plaintiff's and Class Members' PII/PHI and, therefore, did not fully compensate Plaintiff or Class Members for the value that their PII/PHI provided.

216.    Under the principles of equity and good conscience, Defendants should not be permitted to retain the benefits that Plaintiff and Class Members conferred upon it.

217.    Plaintiff and Class Members have no adequate remedy at law.

218.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to: (i) invasion of privacy; (ii) lost or diminished value of PII/PHI; (iii) uncompensated lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their PII/PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' custody, control or possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII/PHI.

219.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from its wrongful conduct. This can be accomplished

by establishing a constructive trust from which Plaintiff and Class Members may seek restitution or compensation.

**COUNT V**
**Intrusion Upon Seclusion/Invasion Of Privacy**
**(On Behalf of Plaintiff and the Nationwide Class)**

220.    Plaintiff realleges and incorporates by reference paragraphs 1-161 as if fully set forth herein.

221.    Plaintiff and Class Members had a reasonable expectation of privacy in the PII/PHI that Defendants mishandled.

222.    Defendants' conduct as alleged above intruded upon Plaintiff's and Class Members' seclusion under common law.

223.    By intentionally failing to keep Plaintiff's and Class Members' PII/PHI safe and secure, and by intentionally misusing and/or disclosing said, Private Information to unauthorized

parties for unauthorized use, Defendants intentionally invaded Plaintiff's and Class Members' privacy.

224.    Defendants knew that Defendants' intentional actions would be considered highly offensive and objectionable.

225.    The right to privacy was intruded by Defendants when they intentionally misused and/or disclosed Plaintiff's PII/PHI without their informed, voluntary, affirmative, and clear consent.

226.    Defendants intentionally concealed from and delayed reporting to Plaintiff and Class Members a security incident that misused and/or disclosed their PII/PHI without their informed, voluntary, affirmative, and clear consent.

227.    As a proximate result of such intentional misuse and disclosures, Plaintiff's and Class Members' reasonable expectations of privacy in their PII/PHI was unduly frustrated and thwarted. Defendants' conduct amounted to a substantial and serious invasion of Plaintiff's and Class Members' protected privacy interests causing anguish and suffering such that an ordinary person would consider Defendants' intentional actions or inaction highly offensive and objectionable.

228.    In failing to protect Plaintiff's and Class Members' PII/PHI, and in intentionally misusing and/or disclosing their PII/PHI, Defendants acted with intentional malice and oppression and in conscious disregard of Plaintiff's and Class Members' rights to have such information kept confidential and private. Plaintiff, therefore, seeks an award of damages on behalf of himself and the Class.

**COUNT V**
**Declaratory and Injunctive Relief, 28 U.S.C. § 2201**
**(On Behalf of Plaintiff and the Nationwide Class)**

229.    Plaintiff realleges and incorporates by reference paragraphs 1-161 as if fully set forth herein.

230.    This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

231.    Defendants owe a duty of care to Plaintiff and Class Members that required it to adequately secure their PII/PHI.

232.    Defendants still possess Plaintiff's and Class Members' PII/PHI, yet does not adequately protect PII/PHI against the threat of a data breach.

233.    Defendants have not satisfied its contractual obligations and legal duties to Plaintiff and Class Members.

234.    Actual harm has arisen in the wake of the Data Breach regarding Defendants' obligations and duties of care to provide security measures to Plaintiff and Class Members. Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their PII/PHI and Defendants' ongoing failure to address the security failings that led to such exposure.

235.    There is no reason to believe that Defendants' employee training and security measures are any more adequate now than they were before the breach to meet its obligations and legal duties.

236.    Plaintiff, therefore, seeks a declaration (1) that Defendants' existing data security measures do not comply with its contractual obligations and duties of care to provide adequate data security, and (2) that to comply with its obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to, being ordered as follows:

a.  prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

b.  ordering that Defendants engage internal security personnel to conduct testing, including audits on Defendants' systems, on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

c.  requiring Defendants to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

d.  ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

e.  ordering that Defendants audit, test, and train its security personnel and employees regarding any new or modified data security policies and procedures;

f.  ordering that Defendants purge, delete, and destroy, in a reasonably secure manner, any Private Information not necessary for its provision of services;

g.  ordering that Defendants conduct regular database scanning and security checks; and

h.  prohibiting Defendants from maintaining PII/PHI of Plaintiff and Class Members on a cloud-based database;

i.  requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

j.  ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel and employees how to safely share and maintain highly sensitive PII/PHI;

k.  requiring Defendants to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding paragraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting personal identifying information;

l.  requiring Defendants to meaningfully educate all class members about the threats they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

m.  requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment; and

n.  such other and further relief as this Court may deem just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of Plaintiff and Class Members, requests judgment against Defendants and that the Court enter an Order:

A.   Certifying this action as a class action and appointing Plaintiff and counsel to represent the Class, pursuant to Federal Rule of Civil Procedure 23;

B.   Granting equitable relief and enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII/PHI, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

C.   Granting injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members;

D.   For an award of actual damages, compensatory damages, statutory damages, and nominal damages, in an amount to be determined, as allowable by law;

E.   For an award of punitive damages, as allowable by law;

F.   For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

G.   Pre- and post-judgment interest on any amounts awarded; and

H.   Such other and further relief as this court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 31, 2024                Respectfully submitted,

By: _/s/ Joe Kendall_
JOE KENDALL
Texas Bar No. 11260700
KENDALL LAW GROUP, PLLC
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
214-744-3000
214-744-3015 (Facsimile)
jkendall@kendalllawgroup.com

50

Andrew W. Ferich (*pro hac vice* forthcoming)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
aferich@ahdootwolfson.com

Jonathan S. Mann (*pro hac vice* forthcoming)
**PITTMAN, DUTTON, HELLUMS,**
**BRADLEY & MANN, P.C.**
2001 Park Place North, Suite 1100
Birmingham, AL 35203
Tel: (205) 322-8880
Fax: (205) 328-2711
E: jonm@pittmandutton.com

*Counsel for Plaintiff and the Putative Class*